[S.F. No. 23420. In Bank. Mar. 8, 1976.]

MARCH FONG EU, as Secretary of State, etc., Petitioner, v.
JOAN G. CHACON, as County Clerk, etc., et al., Respondents;
ROBERT R. STEWART et al., Real Parties in Interest.

466

COUNSEL

Evelle J. Younger, Attorney General, Iver E. Skjeie, Assistant Attorney General, and Richard D. Martland, Deputy Attorney General, for Petitioner.

No appearance for Respondents.

Bowles & Etcheverry, Louis P. Etcheverry and George Wright Quick·for Real Parties in Interest.

## OPINION

**THE COURT.**—This case presents the narrow question whether incumbent justice court judges who were not attorneys when they became judges (hereafter called "nonattorney judges") are eligible to run for reelection at the June 8, 1976, primary election. We have concluded that, by reason of section 71701 of the Government Code, such nonattorney judges are ineligible to run for the office in question.

We trace certain chronology pertinent to the case. On February 6, 1976, real parties in interest filed a mandate action in the Santa Barbara Superior Court, alleging that they are incumbent nonattorney justice court judges seeking reelection to their respective offices at the June 8, 1976, election, and further alleging that respondent county clerks and registrars of voters have refused to file real parties' statements of candidacy and nomination papers. Real parties obtained from the trial court an alternative writ of mandate restraining the Secretary of State (petitioner herein) from interfering with the candidacies of nonattorney judges seeking to run for justice court judgeships, and compelling respondent county clerks and registrars of voters to accept declarations of candidacy from otherwise qualified nonattorney candidates. The court further scheduled for March 8, 1976, a hearing on the question whether a peremptory writ of mandate should issue.

On February 17, petitioner Secretary of State filed with us a petition for writ of mandate or prohibition, requesting this court (1) to direct the Santa Barbara Superior Court to discharge its order of February 6 and refrain from further proceedings in the action, and (2) to prohibit respondent county clerks and registrars of voters from filing any

declarations of candidacy or nomination papers by real parties in interest or other persons similarly situated, for the office of justice court judge, and from placing the names of such persons upon the ballot. In view of the immediacy of the matter and the importance of the question presented, on February 25, 1976, we ordered that an alternative writ of mandamus issue in petitioner's favor, and stayed enforcement of the February 6, 1976, order of the Santa Barbara Superior Court pending final determination of the matter now before us.

The issue in the case involves the correct interpretation of a recent legislative enactment, section 71701 of the Government Code, which provides: "On or after January 7, 1975, each justice court vacancy shall be filled by an attorney judge who shall at the time of his selection be a resident of the county." In brief, it is real parties' position that section 71701 applies only to vacancies occurring *prior to* the expiration of a judge's term of office and calling for the appointment of a successor, rather than to vacancies occurring at the expiration of a fixed term of office and calling for the selection of a successor by general election.

Section 71701, operative on January 7, 1975, was enacted in 1974 as part of legislation (Stats. 1974, ch. 1493, § 1) adopted in response to our decision in *Gordon* v. *Justice Court* (1974) 12 Cal.3d 323 [115 Cal.Rptr. 632, 525 P.2d 72]. In *Gordon*, we held that the use of nonattorney judges in criminal cases in which the defendant was charged with an offense carrying a possible jail sentence constituted a violation of due process unless the defendant consented thereto. (P. 334.) Thereafter, in August 1974, the Judicial Council of California designated a special committee to study the administrative problems arising upon the finality of *Gordon*. In its report the committee proposed legislation to create a temporary additional justice court judgeship, to be filled by an attorney judge, for each justice court district then served by a nonattorney judge and designated by the Judicial Council as in need of such an additional judgeship. (Judicial Council of Cal., Special Judicial Council Committee Rep. (Aug. 21, 1974) Circuit Justice Court Judgeships, pp. 2-3.) The report also proposed that "To further encourage the transition to attorney justice court judges, the [proposed] legislation should also prohibit any further nonattorney *appointments* after January 1, 1975." (*Id.,* at p. 4, italics added.)

Real parties attach significance to the committee's adoption of the word "appointments" in the foregoing context urging that use of the term by the legislation's principal proponent indicates an intent to limit the

effect of section 71701 to judgeship vacancies occurring prior to the expiration of the fixed term of office. However, it will be noted that section 71701 as enacted does not use the word "appointment," but instead refers to the "selection" of judges. As petitioner points out, the latter term reasonably embraces both the appointment and election process. (See *Reed* v. *Hammond* (1912) 18 Cal.App. 442, 444-445 [123 P. 346]; Cal. Const., art. VI, § 15, discussed below.)

Real parties further contend that the use of the word "vacancy" in section 71701 discloses an intent to limit application of the section to justice court judgeships which have become vacant prior to the expiration of the fixed term thereof. According to real parties, they "do not wish to be appointed to fill a vacancy. A regular termination of a term of office is not among the situations listed as vacancies in Government Code section 1770." Section 1770, however, by its very terms pertains solely to the various events which result in a vacancy in an office "before the expiration of the term." Section 1770 is not authority for the proposition that a vacancy does not arise at the expiration of a fixed term. Section 71145 of the Government Code, on the other hand, supports a contrary conclusion. That section provides in pertinent part that ". . . Judges shall hold office until their successors are elected and qualify, *but the office shall be deemed to be vacant upon the expiration of the fixed term for the purpose of selecting a successor.*" (Italics added.) According to a recent opinion by the Attorney General (CR 75-7) on this precise point, "The term 'vacancy' in reference to the office of a judge of the justice court has consistently been interpreted to include both vacancies which arise in the course of a fixed term, as provided in section 1770, and vacancies which arise at the expiration of a fixed term, even though the incumbent still holds office until his successor is selected and qualifies, as provided in section 71145 . . . . Accordingly, section 71701 deals explicitly with the very matter for which section 71145 deems a vacancy to exist, namely, the selection of a successor to fill the office."

Although real parties may be correct in asserting that section 71145 was enacted to fulfill a purpose unrelated to the question before us (see 33 Ops.Cal.Atty.Gen. 1, 3), certainly the section discloses that use of the term "vacancy" in section 71701 was not necessarily indicative of legislative intent to restrict application of 71701 to vacancies arising prior to the expiration of a fixed term.

It is apparent from our review of the legislative history both prior and subsequent to the enactment of section 71701 that petitioner's position

herein must be sustained. From the Judicial Council reports referred to above, and from the text of section 71701 itself, we may assume that the section was adopted (along with other legislation creating new attorney justice court judgeships) ·for the purpose of phasing out nonattorney judges ·in response to our *Gordon* decision. Accordingly, we think it is unlikely that section 71701 was intended to operate in the limited fashion proposed by real parties, permitting all nonattorney judges to retain eligibility for reelection to additional terms of office.

Our conclusion in this regard is confirmed by events occurring subsequent to the enactment of section 71701. In 1975, the Legislature adopted legislation (Assem. Bill No. 2212) amending section 71701 to add the following language to the existing provision quoted above: "Any incumbent justice court judge who is not an attorney may complete his existing term of office and may, so long as there is no break in his service as a justice court judge, seek reelection in his respective district at any future election." The legislative counsel's digest of the bill explained that "Existing law requires justice court vacancies to be filled by attorney judges," the implication being that the new provision was deemed necessary to change existing law. Although the foregoing amendment to section 71701 was adopted by the Legislature, on September 9, 1975, the Governor vetoed the bill on the express ground that "I can see no reason to perpetuate the tenure of lay judges beyond the next election." It appears, accordingly, that both the Legislature and the Governor have assumed that in the absence of the proposed amendment, section 71701 would prevent nonattorney justice court judges from seeking reelection in 1976.

As a general proposition the courts have held that " 'The very fact that the prior act is amended demonstrates the intent to change the pre-existing law . . . .' " (*Clements* v. *T. R. Bechtel. Co.* (1954) 43 Cal.2d 227, 232 [273 P.2d 5]; *Van Nuis* v. *Los Angeles Soap Co.* (1973) 36 Cal.App.3d 222, 228 [111 Cal.Rptr. 398].) ▪ Although a legislative expression of the intent of an earlier act is not binding upon the courts in their construction of the prior act, that expression may properly be considered together with other factors in arriving at the true legislative intent existing when the prior act was passed. (*Bd. of Soc. Welfare* v. *County of L.A.* (1945) 27 Cal.2d 90, 97 [162 P.2d 635]; *Stockton Sav. & `Loan Bank* v. *Massanet* (1941) 18 Cal.2d 200, 204 [114 P.2d 592].)

▪ We conclude that, for all the foregoing reasons, section 71701 must be construed as rendering nonattorney justice court judges ineligi-

ble to seek reelection in 1976. We note that as so construed, section 71701 conflicts with section 71601, enacted in 1953, which sets forth the general qualifications for justice court judges. Although section 71601 was not specifically repealed or amended by the Legislature, our review of the legislative history underlying the enactment of section 71701 convinces us that section 71601 was necessarily repealed by implication, to the extent that its language is inconsistent with the more specific provisions of section 71701 regarding ineligibility of nonattorney candidates for justice court judgeships. (Accord, Ops.Cal.Atty.Gen. CR 75-7, *supra;* see *Cannon* v. *American Hydrocarbon Corp.* (1970) 4 Cal.App.3d 639, 648 [84 Cal.Rptr. 575]; *Sacramento Newspaper Guild* v. *Sacramento County Bd. of Suprs.* (1968) 263 Cal.App.2d 41, 54-55 [69 Cal.Rptr. 480].)

Real parties contend that section 71701 as we have construed it is unconstitutional as violative of equal protection, since it discriminates against nonattorney candidates for justice court judgeships. Real parties assert that no similar restriction is placed upon persons seeking to run for municipal court positions, but this premise appears incorrect. Under article VI, section 15, of the California Constitution, a person is ineligible to be a municipal court judge unless for five years immediately preceding "selection" to municipal court "the person has been a member of the State Bar or served as a judge of a court of record in this State." Thus, in order to qualify for selection to municipal court, a person must either be an attorney or a judge of a court of record (i.e., a court other than a justice court) (see Cal. Const., art. VI, § 1). Although real parties point to one retired municipal court judge who assertedly was never admitted to practice law in this or any other state, petitioner correctly notes that there are presently no nonattorney municipal court judges. Accordingly, we must reject real parties' premise that section 71701 improperly discriminates against them; quite simply, there are no members of the supposedly favored class which real parties have posited.

Finally, real parties argue that since the right to run for public office has been characterized as a "fundamental" interest, legislative restrictions upon that right invoke strict judicial scrutiny and can only be supported by a compelling state interest. (See *Johnson* v. *Hamilton* (1975) 15 Cal.3d 461, 466-468 [125 Cal.Rptr. 129, 541 P.2d 881].) While we agree with the foregoing, stated as a general proposition, we further believe that for reasons similar to those expressed in *Gordon, supra,* the need for a qualified judiciary operating at every level of our state court system must also be characterized as "compelling."

We conclude that real parties are not eligible to file as candidates for the office of justice court judge, and that accordingly petitioner Secretary of State is entitled to the extraordinary relief requested.

Let a peremptory writ of mandate issue. This order is final forthwith.