[No. B211331. Second Dist., Div. Seven. Nov. 12, 2009.]

CITY OF LOS ANGELES, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, DEPARTMENT OF
INDUSTRIAL RELATIONS, DEATH WITHOUT DEPENDENTS UNIT
et al., Respondents.

COUNSEL

Gurvitz Marlowe & Miller and Diane E. Phillips for Petitioner.

No appearance for Respondent Workers' Compensation Appeals Board.

Vanessa L. Holton and Steven A. McGinty for Respondent State of California Death Without Dependents Unit.

OPINION

**PERLUSS, P. J.**—The City of Los Angeles (City) petitioned for review of an order of the Workers' Compensation Appeals Board (WCAB) awarding a full $125,000 death benefit to California's Department of Industrial Relations, Death Without Dependents Unit (DWD Unit), pursuant to Labor Code section 4706.5, subdivision (a),[1] notwithstanding the City's payment of $104,208 in death benefits to the estate of Jaime Foster pursuant to section 4702, subdivision (a)(6)(B). Because the escheat of a death benefit to the state after partial payment to the estate of a deceased worker—in effect, the award of two death benefits for a single death—is inconsistent with the governing statutes and the legislative policy they implement, we annul the order.

---

[1] Statutory references are to the Labor Code unless otherwise indicated.

## FACTUAL AND PROCEDURAL BACKGROUND

Jaime Foster was employed as a firefighter by the City. While on duty on the afternoon of August 14, 2004, Foster was involved in a fatal accident.[2] At the time of her death Foster was 25 years old; she was not married and had no children or other dependents within the meaning of sections 3501 through 3503. Foster died intestate.

The City promptly began advancing workers' compensation death benefits to Foster's mother, Gloria Foster, pursuant to section 4702, subdivision (a)(6)(B), which provides, "Except as otherwise provided in this section . . . , the death benefit in cases of total dependency shall be as follows: [¶] . . . [¶] . . . For injuries occurring on or after January 1, 2004, in the case of no total dependents and no partial dependents, two hundred fifty thousand dollars ($250,000) to the estate of the deceased employee." The City reported the payments to Gloria Foster on a notice-of-employee-death form filed with the Department of Industrial Relations on September 3, 2004.

On November 17, 2004 the DWD Unit filed an application for adjudication of claim with the local district office of the WCAB in Los Angeles, alleging Foster died without dependents and seeking payment of death benefits from the City pursuant to section 4706.5, subdivision (a), which provides, "Whenever any fatal injury is suffered by an employee under circumstances that would entitle the employee to compensation benefits, but for his or her death, and the employee does not leave surviving any person entitled to a dependency death benefit, the employer shall pay a sum to the Department of Industrial Relations equal to the total dependency death benefit that would be payable to a surviving spouse with no dependent minor children [$125,000 for injuries occurring on or after July 1, 1996 but before January 1, 2006]." The City filed an answer disputing the DWD Unit's claim because it was paying a death benefit to Foster's mother.

On August 15, 2005 Gloria Foster filed a formal application for death benefits. Also on August 15, 2005 Gloria Foster filed a petition, and then on October 11, 2005 an amended petition, to be appointed administrator of her daughter's estate under the Independent Administration of Estates Act (Prob. Code, § 10400 et seq.). The amended petition listed Gloria Foster as Jaime Foster's sole heir and identified as property of the estate only an unliquidated amount of damages from a potential lawsuit concerning Foster's death. At the City's request, the claims of the DWD Unit and Gloria Foster on behalf of the estate of Jaime Foster were consolidated.

---

[2] According to the notice of employee death filed by the City with the Department of Industrial Relations, Division of Industrial Accidents, Foster fell off a hook and ladder firetruck as it was backing up and was run over by the truck. She died five hours later.

On July 24, 2006 the Governor signed into law Assembly Bill No. 2292 (2005–2006 Reg. Sess.), which amended section 4706.5 by adding new subdivision (h): "This section does not apply where there is no surviving person entitled to a dependency death benefit or accrued and unpaid compensation if a death benefit is paid to any person under paragraph (6) of subdivision (a) of Section 4702." (Stats. 2006, ch. 119, § 3.) Uncodified section 1 of Assembly Bill No. 2292 declares subdivision (h) is intended "to clarify existing statutory requirements." (Stats. 2006, ch. 119, § 1 ["[i]t is the intent of the Legislature to clarify existing statutory requirements governing the payment of death benefits to the survivors of deceased employees under the workers' compensation system when the employee suffered a fatal injury"].)

■ On November 27, 2006 Division Three of this court held section 4702, subdivision (a)(6)(B), unconstitutional because the California Constitution's enabling provision for the workers' compensation law (Cal. Const., art. XIV, § 4) does not identify workers' estates as a permissible class of beneficiaries. (*Six Flags, Inc. v. Workers' Comp. Appeals Bd.* (2006) 145 Cal.App.4th 91 [51 Cal.Rptr.3d 377] (*Six Flags*).) Immediately thereafter, the City filed a petition to terminate liability for death benefits to the estate and to dismiss Gloria Foster's claim. On July 11, 2007 the workers' compensation administration law judge granted the City's petition. By this time the City had paid $104,208 in death benefits to the estate of Jaime Foster.

The DWD Unit's claim proceeded to trial. On March 26, 2008 the workers' compensation administrative law judge ordered the City to pay the DWD Unit $125,000, less credit for $104,208 previously paid to the estate of Jaime Foster. The judge explained, "The only issue in this matter is whether defendant [the City] is entitled to a credit for the money they paid pursuant to a conflicting but enacted law at the time the payments were made. [¶] This Court believes that equity requires that a credit be given in this matter. The defendant in this matter paid benefits pursuant to a valid and existing law passed by the State of California. . . . To now allow another State Agency to collect the death benefit without credit because the law was declared unconstitutional, appears to this Court to be [i]nequitable."

The DWD Unit petitioned the WCAB for reconsideration. In his report on reconsideration recommending the petition be denied, the workers' compensation administrative law judge defended his initial decision: "The history of death benefits in California workers' compensation law has always provided that the Death Without Dependents Unit would receive no death benefits, where family member <u>dependents</u> were entitled to benefits. While the new statute provided for payment of death benefits to the deceased worker's heir and not dependents[,] it is equally clear the legislative intent was to terminate

DWD's right to death benefits where Labor Code 4702(a)(6) is applicable. This fact is evidenced by the passage of legislative bill AB 2292, which provided that no payment was due DWD where an estate was paid under Labor Code 4702(a)(6). While this bill was passed, it never went into effect because of the decision in the *Six Flags* case. The Bill, however, indicates that the Legislature acknowledged a conflict and would have resolved it in favor of the City in this matter."

The WCAB granted reconsideration and ordered the City to pay the full $125,000 death benefit to the DWD Unit under section 4706.5, subdivision (a), with no credit for sums paid in death benefits to the estate of Jaime Foster pursuant to section 4702, subdivision (a)(6)(B). The WCAB explained section 4706.5, subdivision (a), requires an employer to pay a death benefit to the DWD Unit when an employee with no dependents dies as a result of an injury that arose out of or in connection with employment. Prior to its invalidation in *Six Flags*, section 4702, subdivision (a)(6)(B), required an employer to pay a death benefit to the estate of a deceased employee with no dependents, who had died as a result of an injury that arose out of or in connection with employment. When the Legislature added subdivision (a)(6) to section 4702's provisions for the payment of death benefits in 2002, it did not amend section 4706.5, subdivision (a)'s requirement for payment to the DWD Unit. Accordingly, the WCAB concluded, "there is no actual 'conflict' between the two statutes. At the time the applications were filed in this case, defendant was obligated to pay benefits to both DWD and the deceased's estate."

Unlike the workers' compensation administrative law judge, the WCAB did not find the Legislature's 2006 enactment of new subdivision (h) to section 4706.5 significant, noting the effective date for the new provision was January 1, 2007. However, because the *Six Flags* decision had invalidated section 4702, subdivision (a)(6)(B), prior to that date, "section 4706.5(h) likewise became inoperative, since it depended on the unconstitutional statute for its operation." Finally, whether or not the failure to credit the City for its payments to the estate of Jaime Foster was "inequitable," the WCAB concluded it lacked "authority for allowing a credit against an amount due to DWD pursuant to an unambiguous and unchanged statute for an amount paid to another party pursuant to a statute that has been declared invalid."

The City petitioned the WCAB for reconsideration. The WCAB denied the petition, reiterating its view that the City was liable for death benefits under both section 4702, subdivision (a)(6)(B), and section 4706.5, subdivision (a), until the former provision was found unconstitutional in *Six Flags* and that section 4706.5, subdivision (h), does not assist the City because it never became operative.

On the City's petition, we issued a writ of review on June 19, 2009. Prior to oral argument, we invited the parties to submit supplemental letter briefs addressing whether, if this court were to agree with the City's interpretation of its obligations under sections 4702, subdivision (a)(6)(B), and 4706.5, subdivision (a), the remedy would be to relieve the City of all responsibility for any payment to the DWD Unit, or to order a credit for payments it had made to Gloria Foster or the decedent's estate.

## DISCUSSION

### 1. *Standard of Review*

Issues of statutory interpretation are questions of law subject to our independent or de novo review. (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 311 [93 Cal.Rptr.3d 559, 207 P.3d 20]; *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956]; see *California Veterinary Medical Assn. v. City of West Hollywood* (2007) 152 Cal.App.4th 536, 546 [61 Cal.Rptr.3d 318].) Nonetheless, unless clearly erroneous the WCAB's interpretation of the workers' compensation laws is entitled to great weight. (*Brodie v. Workers' Comp. Appeals Bd.* (2007) 40 Cal.4th 1313, 1331 [57 Cal.Rptr.3d 644, 156 P.3d 1100] [WCAB "has extensive expertise in interpreting and applying the workers' compensation scheme"]; *Ralphs Grocery Co. v. Workers' Comp. Appeals Bd.* (1995) 38 Cal.App.4th 820, 828 [45 Cal.Rptr.2d 197].)

■ "If the statutory language is unambiguous, 'we presume the Legislature meant what it said, and the plain meaning of the statute governs.' " (*People v. Toney* (2004) 32 Cal.4th 228, 232 [8 Cal.Rptr.3d 577, 82 P.3d 778]; see *People v. Loeun* (1997) 17 Cal.4th 1, 9 [69 Cal.Rptr.2d 776, 947 P.2d 1313] [" '[i]n interpreting statutes, we follow the Legislature's intent, as exhibited by the plain meaning of the actual words of the law' "]; *Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985, 990 [73 Cal.Rptr.2d 682, 953 P.2d 858] [in resolving questions of statutory interpretation, the court "must attempt to effectuate the probable intent of the Legislature, as expressed through the actual words of the statutes in question"; the first step " ' "is to scrutinize the actual words of the statute, giving them a plain and commonsense meaning" ' "]; *DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 387–388 [20 Cal.Rptr.2d 523, 853 P.2d 978]; *Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].)

■ Interpretation of the statutory language should be consistent and harmonized with the purpose of the statutory framework for workers' compensation as a whole. (See *Brodie v. Workers' Comp. Appeals Bd., supra*, 40

Cal.4th at p. 1328; *DuBois v. Workers' Comp. Appeals Bd., supra,* 5 Cal.4th at p. 388; *Moyer v. Workmen's Comp. Appeals Bd., supra,* 10 Cal.3d at p. 230.) Pursuant to section 3202, the workers' compensation laws are to " 'be liberally construed by the courts with the purpose of extending [their] benefits for the protection of persons injured in the course of their employment.' " (*Arriaga v. County of Alameda* (1995) 9 Cal.4th 1055, 1065 [40 Cal.Rptr.2d 116, 892 P.2d 150]; see generally *Genlyte Group, LLC v. Workers' Comp. Appeals Bd.* (2008) 158 Cal.App.4th 705, 714 [69 Cal.Rptr.3d 903].) However, liberal construction under "[s]ection 3202 is [only] a tool for resolving statutory ambiguity where it is not possible through other means to discern the Legislature's actual intent." (*Brodie,* at p. 1332.)

2. *The Constitutional and Statutory Provisions for Death Benefits and Other Payments on the Death of an Injured Employee*

■ Article XIV, section 4 of the state Constitution authorizes the Legislature to create a comprehensive system of workers' compensation: "The Legislature is hereby expressly vested with plenary power, unlimited by any provision of this Constitution, to create, and enforce a complete system of workers' compensation, by appropriate legislation, and in that behalf to create and enforce a liability on the part of any or all persons to compensate any or all of their workers for injury or disability, and their dependents for death incurred or sustained by the said workers in the course of their employment, irrespective of the fault of any party." ■ Paragraph 3 of this section, approved by the voters as a constitutional amendment in 1972 (to former art. XX, § 21),[3] added to the Legislature's authority the power "to provide for the payment of an award to the state in the case of the death, arising out of and in the course of the employment, of an employee without dependents . . . ." (See *Six Flags, supra,* 145 Cal.App.4th at pp. 97–98; *Travelers Ins. Co. v. Workers' Comp. Appeals Bd.* (1982) 138 Cal.App.3d 244, 248 [187 Cal.Rptr. 838] (*Travelers Ins.*) ["[e]scheat to the State of California of workers' compensation death benefits required a specific amendment of article XX, section 21, of the Constitution (now art. XIV, § 4), the constitutional provision authorizing the workers' compensation act"].)

■ As it has for more than 70 years, section 4700 provides the death of an injured employee does not affect the liability of an employer for accrued and unpaid expenses for medical treatment or disability benefits. Any such sums are to be paid "to the dependents, or, if there are no dependents, to the

---

[3] Article XX, section 21 of the California Constitution was repealed and readopted as article XIV, section 4 without substantive change in 1976. (See Historical Notes, 2A West's Ann. Cal. Const. (1996 ed.) foll. art. XIV, § 4, p. 544.)

personal representative of the deceased employee or heirs or other persons entitled thereto, without administration."[4]

■ Section 4701 provides, when an injury arising out of or in connection with employment causes death, with or without disability, "the employer shall be liable, in addition to any other benefits provided by this division, for all of the following: [¶] (a) Reasonable expenses of the employee's burial . . . not exceeding five thousand dollars ($5,000). [¶] (b) A death benefit, to be allowed to the dependents when the employee leaves any person dependent upon him or her for support."

Sections 4702 and 4703 prescribe the amount of the dependency death benefit, as authorized by section 4701, subdivision (b), and specify the allocation of the death benefit when there is more than one dependent. For example, if an employee had two total dependents, regardless of the number of partial dependents, the death benefit for injuries occurring between July 1, 1996 and December 31, 2005 is $145,000, and for injuries occurring on or after January 1, 2006 is $290,000. (§ 4702, subd. (a)(1).) The death benefit in this example would be divided equally between the two total dependents. (§ 4703, 4th par. ["[i]f there is more than one person wholly dependent for support upon a deceased employee, the death benefit shall be divided equally among them"].)

■ By its literal terms section 4702, subdivision (a), purports to set the amount of death benefit only "in cases of total dependency." This notwithstanding, section 4702, subdivision (a)(4)(A) and (B) provides for an award of a death benefit "[i]n the case of no total dependents and one or more partial dependents." Similarly, section 4702, subdivision (a)(6)(B), added in 2002, as amended in 2004, provides a death benefit "[f]or injuries occurring on or after January 1, 2004, in the case of no total dependents and no partial dependents, two hundred fifty thousand dollars ($250,000) to the estate of the deceased employee."[5]

---

[4] Section 4700 reads in full: "The death of an injured employee does not affect the liability of the employer under Articles 2 (commencing with Section 4600) [medical and hospital treatment] and 3 (commencing with Section 4650) [disability payments]. Neither temporary nor permanent disability payments shall be made for any period of time subsequent to the death of the employee. Any accrued and unpaid compensation shall be paid to the dependents, or, if there are no dependents, to the personal representative of the deceased employee or heirs or other persons entitled thereto, without administration."

[5] When initially adopted by the Legislature in 2002 as former section 4702, subdivision (a)(6), this provision was not limited to deaths resulting from injuries occurring on or after January 1, 2004. (See Stats. 2002, ch. 6, § 68 [approved by the Governor on Feb. 15, 2002, filed Feb. 19, 2002].) Later in 2002, however, the Legislature amended the provision to create the January 1, 2004 trigger date. (See Stats. 2002, ch. 866, § 12 [approved by the Governor on Sept. 25, 2002, filed Sept. 26, 2002].) In 2004 this provision was renumbered as section 4702,

Section 4706.5, enacted upon voter approval of the 1972 constitutional amendment authorizing the escheat of death benefits to the state (see *Atlantic Richfield Co. v. Workers' Comp. Appeals Bd.* (1982) 31 Cal.3d 715, 723 [182 Cal.Rptr. 778, 644 P.2d 1257] (*Atlantic Richfield*); *Travelers Ins., supra*, 138 Cal.App.3d at p. 253), provides in subdivision (b), "When the deceased employee leaves no surviving dependent, personal representative, heir, or other person entitled to the accrued and unpaid compensation referred to in Section 4700, the accrued and unpaid compensation shall be paid by the employer to the Department of Industrial Relations." With respect to death benefits, rather than unpaid compensation, subdivision (a) provides, "Whenever any fatal injury is suffered by an employee under circumstances that would entitle the employee to compensation benefits, but for his or her death, and the employee does not leave surviving any person entitled to a dependency death benefit, the employer shall pay a sum to the Department of Industrial Relations equal to the total dependency death benefit that would be payable to a surviving spouse with no dependent minor children [$125,000 for injuries occurring on or after July 1, 1996 but before January 1, 2006]." Subdivision (h), added to section 4706.5 in 2006 by Assembly Bill No. 2292 (2005–2006 Reg. Sess.), provides, "This section does not apply where there is no surviving person entitled to a dependency death benefit or accrued and unpaid compensation if a death benefit is paid to any person under paragraph (6) of subdivision (a) of Section 4702." (Stats. 2006, ch. 119, § 3.)

### 3. *The* Six Flags *Decision*

In *Six Flags, supra*, 145 Cal.App.4th 91, our colleagues in Division Three invalidated section 4702, subdivision (a)(6)(B), holding the Legislature was not authorized by the state Constitution to direct workers' compensation death benefits to a deceased worker's estate: "A constitutional amendment to article XIV, section 4, adding deceased workers' estates as a class of beneficiaries entitled to workers' compensation benefits, is necessary before the Legislature is empowered to promulgate a statute awarding workers' compensation death benefits to a deceased worker's estate." (*Six Flags*, at p. 94.) In reaching this conclusion the court first summarized the Supreme Court's decisions in *Commercial Cas. Ins. Co. v. Indus. Acc. Com.* (1930) 211 Cal. 210 [295 P. 11] and *Yosemite L. Co. v. Industrial Acc. Com.* (1922) 187 Cal. 774 [204 P. 226], overturning legislation that had required an employer

---

subdivision (a)(6)(B), and a new subdivision (a)(6)(A) was added, providing, "In the case of a police officer who has no total dependents and no partial dependents, for injuries occurring on or after January 1, 2003, and prior to January 1, 2004, two hundred fifty thousand dollars ($250,000) to the estate of the deceased police officer." (Stats. 2004, ch. 92, § 1.) The new provision was given retroactive effect (Stats. 2004, ch. 92, § 2) to benefit the estate of Matthew Pavelka, a Burbank police officer killed in the line of duty in November 2003. (See Assem. Com. on Insurance, Analysis of Assem. Bill No. 1840 (2003–2004 Reg. Sess.) as amended Mar. 18, 2004.)

to pay specified sums to a state fund to benefit workers in general if an employee suffered a fatal injury in the course of his or her employment and left no dependents to whom a death benefit could be paid. (See *Six Flags*, at pp. 96–97.) The *Six Flags* court then reviewed the 1972 constitutional amendment and the ballot pamphlet distributed to voters, which explained the Legislature lacked the authority to require an award of workers' compensation death benefits to the state absent an amendment to the Constitution specifically designating the state as a permissible beneficiary of such an award. (*Six Flags*, at pp. 97–98.)

Based upon the rationale of *Commercial Cas. Ins. Co. v. Indus. Acc. Com., supra*, 211 Cal. 210, and *Yosemite L. Co. v. Industrial Acc. Com., supra*, 187 Cal. 774, as well as the Supreme Court's post-1972-amendment decision in *Atlantic Richfield, supra*, 31 Cal.3d 715, Division Three held the Legislature's plenary power under California Constitution, article XIV, section 4, can be used only for the purposes set forth in the other section of that constitutional provision: "[T]he Legislature in the exercise of its plenary powers to establish a complete system of workers' compensation did not have authority to expand by statute the classes of beneficiaries entitled to workers' compensation death benefits beyond the three beneficiary classes (i.e., workers, dependents, and the state), identified in article XIV, section 4." (*Six Flags, supra*, 145 Cal.App.4th at p. 100.) Finally, the court held "estates" are not "dependents" within the meaning of sections 3501 through 3503 (*Six Flags*, at p. 104) and concluded an award of a death benefit to a nondependent estate does not further "the underlying policy of the workers' compensation laws, which is to compensate workers and their dependents for a loss of earnings based upon death" (*id.* at p. 105).

4. *The Legislature Did Not Intend to Require an Employer to Pay Death Benefits Both to the Estate or Surviving Heirs of a Deceased Employee and to the DWD Unit*

The WCAB's decision in favor of the DWD Unit in this case is straightforward: A deceased employee's estate cannot be a dependent of the employee under sections 3501 through 3503, as Division Three of this court held in *Six Flags*. (*Six Flags, supra*, 145 Cal.App.4th at p. 104.)[6] Payment of a death

---

[6] Pursuant to section 3501, subdivision (a), a child under the age of 18 years or a child of any age physically or mentally incapacitated from earning is conclusively presumed to be wholly dependent for support upon a deceased employee-parent with whom that child is living at the time of injury resulting in death if there is no surviving, wholly dependent parent. Under section 3501, subdivision (b), a deceased employee's spouse is conclusively presumed to be wholly dependent if the surviving spouse earned $30,000 or less in the 12 months preceding the death. "In all other cases, questions of entire or partial dependency and questions as to who are dependents and the extent of their dependency shall be determined in accordance with the facts as they exist at the time of the injury of the employee." (§ 3502.)

benefit to an estate, therefore, does not constitute payment of a death benefit to a dependent. (See *Six Flags*, at pp. 104–105.) Accordingly, even though payment to the deceased employee's estate was mandated by section 4702, subdivision (a)(6)(B), because Foster left no survivor entitled to a "dependency death benefit," her employer (the City) was also obligated to pay the DWD Unit pursuant to section 4706.5, subdivision (a).

> a. *Death benefits are payable to the state only if no other payment of death benefits is authorized by statute*

Even considering only the literal meaning of the applicable statutes, the WCAB's reasoning is problematic. The first sentence of section 4702, subdivision (a), specifies, "[e]xcept as otherwise provided . . . , *the death benefit in cases of total dependency* shall be as follows . . . ." (Italics added.) The Legislature then prescribes a variety of payments in six separately numbered subparagraphs, all under the label "death benefit in cases of total dependency." (See § 4702, subd. (a)(1)–(6).) Yet, as previously discussed, not all those payments are for cases of total dependency—subdivision (a)(4) provides for payments in cases of partial dependency when there are no total dependents, and subdivision (a)(6) for payments when there are neither total nor partial dependents.

Given that the Legislature has categorized all these payments as "death benefits in cases of total dependency" in section 4702, subdivision (a), even though some are not, if we consider that section and section 4706.5 as parts of a unified whole, there is no compelling reason not to construe similar language in section 4706.5, which refers to "dependency death benefits," also to include all of those payments, even if that term might have a different meaning in another context. (See generally *In re Marriage of Harris* (2004) 34 Cal.4th 210, 222 [17 Cal.Rptr.3d 842, 96 P.3d 141] [" 'we do not construe statutes in isolation, but rather read every statute "with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness" ' "].) That is, although the terminology in the two provisions differs to some extent, it is reasonable to conclude the Legislature intended when it enacted section 4706.5 to authorize payment of a statutory death benefit to the state only if there is no person qualified to claim a death benefit under section 4702. (See *Travelers Ins., supra*, 138 Cal.App.3d at pp. 251–252 [§ 4706.5 provides for escheat to the state only when no other payment of death benefits is properly made]; cf. *Atlantic Richfield, supra*, 31 Cal.3d at pp. 726–727 [the state is not entitled to any payment in death benefit cases of partial dependency].)[7]

---

[7] An "estate" is not a "person." Therefore, as a technical matter, an employer's obligation to pay a death benefit to the estate of a deceased employee under section 4702, subdivision (a)(6),

In fact, when subdivision (a)(6) was initially added to section 4702 by Assembly Bill No. 749 (2001–2002 Reg. Sess.), the same legislation also created a new subdivision (c) section 3501, conclusively presuming the surviving parent or parents of a deceased employee to be wholly dependent for support upon the deceased employee "[i]n the event that no person qualifies as a total or partial dependent of the deceased employee . . . ." (Stats. 2002, ch. 6, § 43.) In other words, a surviving parent like Gloria Foster was conclusively presumed to be a dependent for purposes of the statutory death benefit when the deceased employee had no real dependents. As described at page 7 of the report by the Assembly Committee on Insurance on Assembly Bill No. 749 (2001–2002 Reg. Sess.) as amended January 31, 2002, these new provisions "[c]larif[y] that when an employee dies without dependents, death benefits will be paid to the parent(s) or, if there are no surviving parents, to the employee's estate."[8] Nothing in the language of Assembly Bill No. 749 itself or in its legislative history suggests an intent to require the employer to pay this death benefit to a deceased employee's parents or his or her estate and also to make an additional death benefit payment to the DWD Unit pursuant to section 4706.5, subdivision (a).

b. *Death benefits cannot escheat to the state if a benefit is paid to a deceased employee's dependents or legal heirs*

As Division Three explained nearly 25 years before its decision in *Six Flags*, section 4706.5 is "limited by and must be interpreted consistently with" the 1972 constitutional amendment that permitted the Legislature "to authorize the escheat of death benefits to the state." (*Travelers Ins., supra*, 138 Cal.App.3d at pp. 249, 252; see also *Atlantic Richfield, supra*, 31 Cal.3d at pp. 725–726 ["there is precedent in this area for the proposition that the

---

does not mean the employee has left "surviving any *person* entitled to" the benefit, as provided in section 4706.5, subdivision (a). But the Legislature's use of language is anything but precise in these Labor Code provisions. As the court explained in *Six Flags, supra*, 145 Cal.App.4th at page 104, " 'The "estate" of a decedent is not an entity known to the law. It is neither a natural nor an artificial person. It is merely a name to indicate the sum total of the assets and liabilities of a decedent . . . .' " (See also *Conservatorship of Hume* (2006) 139 Cal.App.4th 393, 398–399 [42 Cal.Rptr.3d 796] [an "estate" consists of a person's collective assets and liabilities].) Thus, the payment prescribed by section 4702, subdivision (a)(6)(B), should have been directed to the personal representative of the deceased employee (the executor or administrator of his or her estate), as was done, for example, in section 4700 with respect to accrued and unpaid compensation due a deceased employee without dependents. Indeed, the Legislature appears to have recognized this flaw in its terminology; in section 4706.5, subdivision (h), it refers to a death benefit "paid to any person under paragraph (6) of subdivision (a) of Section 4702," not to a benefit paid to the deceased employee's estate.

[8] Former section 3501, subdivision (c), the conclusive presumption regarding the surviving parent(s) of a deceased employee without dependents, was deleted later in 2002 by Assembly Bill No. 486 (2001–2002 Reg. Sess.), Statutes 2002, chapter 866, section 6, which also delayed the operative date for section 4702, subdivision (a)(6) to January 1, 2004. (Stats. 2002, ch. 866, § 12; see fn. 5, above.)

Legislature may *not* go beyond the precise terms of the constitutional enabling provisions—except, perhaps, that it may use its plenary or police powers to promote the overall purposes of the workers' compensation scheme"].) To be sure, the constitutional amendment was specifically directed to "an award to the state in the case of the death, arising out of and in the course of the employment, of an employee without dependents." (Cal. Const., art. XIV, § 4.) But, as noted by both the Supreme Court in *Atlantic Richfield*, at page 724 and Division Three in *Travelers Ins.*, at page 251, consistent with the doctrine of escheat,[9] the unopposed ballot argument in favor of the proposition spoke in terms of "legal heirs," not "dependents": "Under existing law the death benefits from Workmen's· Compensation award, which normally are paid to legal heirs, are paid to no one if legal heirs cannot be found. A YES vote on Proposition 13 would allow the Legislature to enact laws which would require that such benefits be paid to a state fund when no legal heirs can be found."[10] (Ballot Pamp., Gen. Elec. (Nov. 7, 1972) argument in favor of Prop. 13, p. 31.)

Although Jaime Foster died without dependents, her mother was her legal heir. Under section 4700 any accrued and unpaid compensation for medical treatment or disability benefits would have been paid to her, and under section 4706.5, subdivision (b), the DWD Unit would have no claim to any such compensation. Until invalidated by the court in *Six Flags, supra*, 145 Cal.App.4th 91, Foster's mother similarly was entitled to a death benefit under section 4702, subdivision (a)(6)(B), as her sole legal heir. As described in the 1972 ballot argument, because those benefits were paid to Foster's legal heir, no escheat to the state would be warranted; and none is authorized if section 4706.5 is interpreted consistently with the legislative history of the 1972 constitutional amendment. (See *Travelers Ins., supra*, 138 Cal.App.3d at p. 251 ["[t]he voters pamphlet, however, discusses the amendment in terms of the state receiving the death benefit where the employee dies '*without* dependents' (Amendment Summary) . . . 'leaves *no* dependent heirs' (Cost Analysis by the Legislative Analyst), and '*no* legal heirs can be found' (argument in favor of Prop. 13)"].)

---

[9] California's unclaimed property law defines "escheat" as "the vesting in the state of title to property the whereabouts of whose owner is unknown or whose owner is unknown or which a known owner has refused to accept . . . ." (Code Civ. Proc., § 1300, subd. (c).)

[10] Portions of the ballot pamphlet are quoted in *Atlantic Richfield, supra*, 31 Cal.3d at page 724 and *Travelers Ins., supra*, 138 Cal.App.3d at pages 249 through 251. The full pamphlet is available at <http://library.uchastings.edu/ballot_pdf/1972g.pdf> (as of Nov. 12, 2009).

c. *The Legislature's declaration that section 4706.5, subdivision (h), clarifies existing law, although not binding, is a significant factor in construing the scope of the escheat statute*

Finally, although not determinative, unlike the WCAB we consider it highly significant that the Legislature expressly stated it intended to clarify existing law when it enacted Assembly Bill No. 2292 (2005–2006 Reg. Sess.) and added subdivision (h) to section 4706.5 in 2006, explicitly providing an employer has no obligation to make a payment to the DWD Unit if, like the City here, it has paid a death benefit under section 4702, subdivision (a)(6). (See *Eu v. Chacon* (1976) 16 Cal.3d 465, 470 [128 Cal.Rptr. 1, 546 P.2d 289] ["[a]lthough a legislative expression of the intent of an earlier act is not binding upon the courts in their construction of the prior act," subsequent expressions of intent "may properly be considered together with other factors in arriving at the true legislative intent existing when the prior act was passed"]; *Aguiar v. Superior Court* (2009) 170 Cal.App.4th 313, 327 [87 Cal.Rptr.3d 813] [city council's subsequent repeal of administrative regulation is "powerful evidence" of its intent in adopting original ordinance]; *J. Paul Getty Museum v. County of Los Angeles* (1983) 148 Cal.App.3d 600, 606 [195 Cal.Rptr. 916] ["[w]hile we are not bound by a subsequent legislative interpretation of existing law, it may be considered as a factor in determining the correct meaning and effect of a statute"].)

Uncodified section 1 of Assembly Bill No. 2292 (2005–2006 Reg. Sess.) declares the addition of subdivision (h) is intended "to clarify existing statutory requirements governing the payment of death benefits to the survivors of deceased employees under the workers' compensation system when the employee suffered a fatal injury." (Stats. 2006, ch. 119, § 1.) The April 5, 2006 report by the Assembly Committee on Insurance on Assembly Bill No. 2292 explained the sponsor of the legislation, the California Professional Firefighters, citing several instances in which the DWD Unit had made claims for statutory death benefits even though the employer had paid the deceased employee's estate under section 4702, subdivision (a)(6)(B), proposed the bill "to clear up the confusion in this area." (Assem. Com. on Insurance, Rep. on Assem. Bill No. 2292 (2005–2006 Reg. Sess.) as introduced, p. 3.) As stated in the committee report, "This bill clarifies that it is the intent of the Legislature that when an heir of a deceased employee is found, the state has no standing to claim workers' compensation death benefits under the death without dependents provisions of the code." (*Id.* at p. 2; see also Sen. Com. on Labor and Industrial Relations, Rep. on Assem. Bill No. 2292 (2005–2006 Reg. Sess.) as amended Apr. 27, 2006, p. 2 [same].)

Particularly since this declared intent is supported by the history of the 1972 constitutional amendment authorizing the enactment of section

4706.5, as well as by the absence of any indication the Legislature intended to require the award of two death benefits for a single death when it added section 4702, subdivision (a)(6), we conclude section 4706.5, subdivision (h) did, in fact, simply clarify existing law, rather than create a new exception to the DWD Unit's statutory right to claim a death benefit.

### 5. *The DWD Unit Is Not Entitled to a Partial Payment of the Death Benefit*

Once section 4702, subdivision (a)(6)(B), was invalidated by *Six Flags, supra,* 145 Cal.App.4th 91, the City effectively abandoned its position that the DWD Unit should receive no payment at all under section 4706.5, subdivision (a), and instead argued that the full $125,000 death benefit claimed by the DWD Unit should be reduced by a credit for the $104,208 in death benefits it had paid to the estate of Jaime Foster.[11] The workers' compensation administrative law judge, applying principles of equity, adopted this approach.

 We agree with the WCAB that no authority exists for allowing a credit or ordering a partial payment to the DWD Unit.[12] Either section 4706.5, subdivision (a), requires a payment (or permits an escheat) to the state or it does not. That an employer (or its carrier) has made a payment pursuant to section 4702, subdivision (a), of a sum less than the amount mandated by section 4706.5, subdivision (a)—that is, a payment less than "the total dependency death benefit that would be payable to a surviving spouse with no dependent minor children"—does not justify an award of the unpaid balance to the state. "[O]n its face, section 4706.5, subdivision (a), does not provide for payment of any balance to the [Department of Industrial Relations] if partial death benefits are paid." (*Atlantic Richfield, supra,* 31 Cal.3d at p. 726; see *Travelers Ins., supra,* 138 Cal.App.3d at p. 254 [under § 4706.5 the state may receive death benefits only where no death benefit at all paid under § 4702].)

 Although including the estate of an employee in the class of dependents entitled to recover a death benefit under section 4702, subdivision (a), has now been invalidated, the Legislature required those payments and intended, when made, that they would displace any obligation to the

---

[11] In response to our invitation to submit supplemental letter briefs on the issue of remedy, the City once again reiterated its position it is entitled to a credit for payments made to Gloria Foster on behalf of the estate of Jaime Foster and was not seeking to be relieved of all responsibility for any payment to the DWD Unit.

[12] Although the DWD Unit disagrees with our interpretation of the relationship between sections 4702, subdivision (a), and 4706.5, subdivision (a), it agrees no credit or partial payment is authorized or appropriate.

DWD Unit. Because the City in fact paid the estate of Jaime Foster pursuant to section 4702, subdivision (a)(6)(B), no payment at all was due the DWD Unit.

## DISPOSITION

The order of the WCAB awarding a death benefit to the DWD Unit is annulled. Each party is to bear its own costs in this writ proceeding.

Woods, J., and Zelon, J., concurred.